[Cite as *State v. Kellogg*, 2015-Ohio-5000.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| | | No. 15AP-131 |
| Plaintiff-Appellee, | : | (C.P.C. No. 13CR-4468) |
| | | **and** |
| v. | : | No. 15AP-132 |
| | | (C.P.C. No. 13CR-5018) |
| Chad A. Kellogg, | : | |
| | | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

———————

D E C I S I O N

Rendered on December 3, 2015

———————

*Ron O'Brien*, Prosecuting Attorney, and *Laura R. Swisher*, for appellee.

*Wolfe Van Wey & Associates, LLC*, and *Marcus M. Van Wey*, for appellant.

———————

APPEALS from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Chad A. Kellogg ("appellant"), appeals the February 5, 2015 judgment of the Franklin County Court of Common Pleas convicting him, pursuant to a bench trial, of two counts of burglary, in violation of R.C. 2911.12, a felony of the second degree. For the reasons that follow, we affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶ 2} On August 14, 2013, First Shift Patrol Sergeant Curtis Baker, a Hilliard police officer, responded to a dispatch call at a condominium complex in Hilliard. The call was from a condominium resident, Todd Leonard ("Leonard"), who discovered an unknown male inside his secured screened-in porch around 12:50 pm. By the time Leonard discovered the unknown male, he had bypassed a locked door, and was sliding open an unlocked screen door into Leonard's home.

{¶ 3} Leonard asked the unknown male, whom he described as "confused" and "stumbling for words," what he was doing. (Tr. 25, 46.) The unknown male told Leonard that he was working with a landscaping company and asked if Leonard wanted his leaves blown. Leonard declined and asked him to leave.

{¶ 4} A few minutes after the unknown male left his home, Leonard discovered that the door to his screened-in porch had been damaged, and the screen had been slit next to the lock on the door. Realizing that the unknown male had not only come onto his back porch and opened the screen door, but also had broken in, Leonard called the Hilliard Police.

{¶ 5} Arriving shortly after Leonard's call, Sergeant Baker discovered appellant, matching Leonard's description of the unknown male, standing in the middle of the street. While appellant denied having gone on anyone's porch or having confrontations with anyone, he did inform Sergeant Baker that he talked to someone about blowing their leaves off their porch. After detaining appellant, Sergeant Baker discovered that he had a knife in his pocket. Appellant later testified that he used the knife for work, specifically to cut string trimmer line.

{¶ 6} Later that day, at around 7:45 p.m., the Hilliard Police received another dispatch call to the same condominium complex in Hilliard. This time the call was from condominium resident Patrick Callaghan ("Callaghan"), who, upon returning from work around 4:30 p.m., discovered that his home had been broken into. Specifically, he noticed that the sliding door to his screened-in patio was cracked, and the tension bar used to keep the door secure had been popped and sprung. Additionally, Callaghan noticed that the screen to his bedroom window, as well as the thermometer that had a wire running through the window to the outside, was pulled out of the window.

{¶ 7} Responding to Callaghan's call, Officer Sean Johnson inspected the home for damage. Officer Johnson recorded the damage to the sliding door and bedroom window. Additionally, he recovered latent fingerprints outside the bedroom window, which Bureau of Criminal Investigation Forensic Scientist Ashley Owen later identified as matching appellant's fingerprints.

{¶ 8} On that day, appellant reported to his job as a temporary employee for Davey Landscaping at the condominium complex. Appellant testified that, even though

he knew that his crew was responsible for landscaping the northern portion of the condominium complex, he wandered off to the other side.  According to appellant, he was too intoxicated to fulfill his work duties; since he was concerned that his other crew members or his supervisor would notice, he grabbed a trash can, typically used for holding pulled weeds, and searched for a place to hide.

{¶ 9}  On August 22, 2013, a Franklin County Grand Jury filed an indictment in case No. 13CR-4468, charging appellant with one count of burglary, in violation of R.C. 2911.12, a felony of the second degree.  Then, on September 20, 2013, a Franklin County Grand Jury filed an indictment in case No. 13CR-5018, charging appellant with one count of burglary, in violation of R.C. 2911.12, a felony of the second degree.  After appellant entered a plea of not guilty to each of the charges and the trial court granted a motion to consolidate the cases for trial, the case proceeded to a two-day bench trial.  On December 18, 2014, the trial court found appellant guilty of both charges.  On February 4, 2015, the trial court held a sentencing hearing, imposing two consecutive prison terms: one prison term of two years in case No. 13CR-4468, and one prison term of two years in case No. 13CR-5018.  The sentences were to be served consecutively.  Appellant timely appealed.

## II. Assignments of Error

{¶ 10}  Appellant appeals, assigning the following three errors for our review:

> [I.] THE TRIAL COURT'S VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> [II.] THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS.
>
> [III.] THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29.

For ease of discussion, we consider appellant's assignments of error out of order.

### A. Second and Third Assignments of Error—Sufficiency of the Evidence

{¶ 11}  In his second and third assignments of error, appellant asserts that the trial court's judgment of conviction for the two counts of burglary was insufficiently supported by the evidence presented at trial, and that the trial court erred in denying appellant's Crim.R. 29 motion for acquittal.

{¶ 12} We begin by noting that "[b]ecause analysis of the evidence for purposes of a Crim.R. 29(A) motion looks at the sufficiency of the evidence, a Crim.R. 29(A) motion and a review of the sufficiency of the evidence are subject to the same analysis." *State v. Clellan*, 10th Dist. No. 09AP-1043, 2010-Ohio-3841, ¶ 7, quoting *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37. Thus, we review appellant's second and third assignments of error together.

{¶ 13} Sufficiency of evidence is a "legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When judging the sufficiency of the evidence to support a criminal conviction, an appellate court must decide if, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Where the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," it is sufficient to sustain a conviction. *Id.* at 273.

{¶ 14} The focus of appellant's sufficiency argument is the "intent" element of burglary. In support of his assertion that his conviction for the two counts of burglary was insufficiently supported by the evidence presented at trial, and that the trial court erred in denying his Crim.R. 29 motion for acquittal, appellant contends that "no one observed [him] damage any door, window or screen and [he] never stated any intention of committing any theft offense." (Appellant's Brief, 11.)

{¶ 15} While appellant is correct that the record contains no direct evidence that he committed any damage to the condominiums or expressed any intention of committing any criminal offense, appellant's convictions can be sustained based on circumstantial evidence. *See State v. Jewett*, 10th Dist. No. 11AP-1028, 2013-Ohio-1246, ¶ 34, quoting *State v. Fausnaugh*, 10th Dist. No. 11AP-842, 2012-Ohio-4414, ¶ 26 ("Under Ohio law * * * circumstantial evidence can have the same probative value as direct evidence, and '[a] conviction can be sustained based on circumstantial evidence alone.' "). Ultimately, the record contains sufficient circumstantial evidence to support the trial court's conviction and denial of appellant's Crim.R. 29 motion for acquittal.

Moreover, we have held that "[t]here is a reasonable inference that one who forcibly enters a dwelling, or a business place, does so with the intent to commit a theft offense in the absence of circumstances giving rise to a different inference." *State v. Flowers*, 16 Ohio App.3d 313 (10th Dist.1984), paragraph one of the syllabus; *see also State v. Levingston*, 106 Ohio App.3d 433, 436 (2d Dist.1995); *State v. Galloway*, 10th Dist. No. 03AP-407, 2004-Ohio-557; *State v. New*, 10th Dist. No. 05AP-930, 2006-Ohio-2965, ¶ 15 ("Where a person forces entry into a structure, it is reasonable to infer that he did so with the intent to commit a theft offense, in the absence of circumstances giving rise to a different inference.").

{¶ 16} First, the trial court found that appellant was responsible for the damage that was committed to both Leonard's and Callaghan's condominiums. Leonard testified that he discovered, just minutes after finding appellant in his secured screened-in porch, that the door to his screened-in porch had been damaged, and the screen had been slit next to the lock on the door. Moreover, the fingerprints recovered from Callaghan's bedroom window were found to belong to appellant. Based on this evidence, the trial court could—and did—reasonably infer that appellant entered both Leonard's and Callaghan's condominiums and caused damage.

{¶ 17} Second, the trial court properly found that appellant had the intention to commit a criminal offense. As the trial judge noted:

> [A] person acts knowingly regardless of his purpose when he is aware that certain conduct would probably cause a certain result. A person has knowledge of circumstances when he's aware circumstances probably exist. Since you can not look into the mind of another, you must determine knowledge from all the facts and circumstances in evidence.

(Tr. 182.) The facts and circumstances in this record are sufficient to support his conviction and denial of his Crim.R. 29 motion for acquittal.

{¶ 18} While appellant contends that he did not intend to commit any criminal offense, the evidence in the record leads to a different reasonable inference. For example, the trial court reasonably inferred that appellant's aggressive attempts to enter into Leonard's and Callaghan's condominiums, resulting in damage to the screen doors and bedroom window, indicated that he acted knowingly. While appellant claimed that he was too intoxicated to form such intent, the evidence suggests otherwise. For example,

appellant was not so intoxicated that he was unable to communicate with Leonard and Sergeant Baker.  Moreover, appellant was not so intoxicated that he could not formulate a plan to hide from his crew members and supervisor—let alone to take a trash can with him to make his story more believable.

{¶ 19} Accordingly, we overrule appellant's second and third assignments of error.

## B. First Assignment of Error—Manifest Weight

{¶ 20} In his first assignment of error, appellant asserts that the trial court's judgment of conviction was against the manifest weight of the evidence.

{¶ 21} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a ' "thirteenth juror" ' and disagrees with the factfinder's resolution of the conflicting testimony."  *Id.* at 387, citing *Tibbs v. Florida,* 457 U.S. 31, 42 (1982). " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' "  *Id.*, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983).  This authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.,* quoting *Martin* at 175.

{¶ 22} In support of his assertion that his convictions were against the manifest weight of the evidence, appellant contends that the state failed to prove that he intended to commit any criminal offense; instead, he claims that the evidence presented at trial demonstrated that he "acted in the hope of keeping his job." (Appellant's Brief, 9.)

{¶ 23} In evaluating appellant's assertion, we engage in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the trial court's verdict to permit reasonable minds to find guilt beyond a reasonable doubt.  *State v. Conley*, 10th Dist. No. 93AP-387 (Dec. 16, 1993).  Specifically, we examine the evidence supporting the trial court's finding that, based on the surrounding facts and circumstances, appellant acted with the purpose to commit any criminal offense; or put another way, that there was enough evidence presented at trial to satisfy the "intent"

element of the offense of burglary. *State v. Johnson*, 56 Ohio St.2d 35 (1978), quoting *State v. Huffman*, 131 Ohio St. 27 (1936).

{¶ 24} For the offense of burglary, one may form the purpose to commit any criminal offense at *any* point during the course of a trespass. *See State v. Fairrow*, 4th Dist. No. 02CA2668, 2004-Ohio-3145, ¶ 26, citing *State v. Fontes*, 87 Ohio St.3d 527 (2000). In situations where a person is apprehended before committing any overt act inside the premises, a reasonable inference arises that the person entered the structure with the intent to commit a criminal offense unless circumstances giving rise to a different inference exist. *State v. Morris*, 159 Ohio App.3d 775, 2005-Ohio-962, ¶ 20 (4th Dist.), citing *Flowers* at 315; *Levingston* at 436. Moreover, a fact finder "is not required to accept a competing inference of innocence if it may infer guilt, beyond a reasonable doubt, from the same circumstances." *Id.* at 437 (jury not required to accept defendant's explanation that he was looking for a place to get warm, to sleep, and to think). *See also State v. Ridgway*, 4th Dist. No. 02CA20, 2003-Ohio-1152.

{¶ 25} In *Ridgway*, the appellant attempted to explain his trespass by claiming that he needed to use the bathroom. The court, however, held that the jury was not required to accept the appellant's explanation and sustained his burglary conviction. *Id.* at ¶ 22. The court reasoned that the jury, in resolving conflicting evidence, could find that the appellant's explanation was implausible under the circumstances, and, instead, reasonably infer that he had the intention of committing an offense. *Id.*

{¶ 26} Here, as discussed above, while the state provided circumstantial evidence to support the conclusion that appellant intended to commit a criminal offense within Leonard's and Callaghan's condominiums, appellant argues that his testimony provides a conflicting explanation—that he was intoxicated and concerned about losing his job. Specifically, he contends that, in an attempt to "look like [he] was busy" while he "weather[ed] the storm," he grabbed a trash can, an item typically used for pulling weeds that would give him an excuse if discovered, and ventured out of sight from his crew members and supervisor. (Tr. 138.)

{¶ 27} The state's witnesses, however, presented testimony that disputed the accuracy of appellant's explanation. First, as previously discussed, the state presented evidence demonstrating that appellant forcefully trespassed into both Leonard's and

Callahan's condominiums, giving rise to the inference that he intended to commit a criminal offense. Leonard discovered that the door to his screened-in porch was damaged and his screen was slit just moments after finding appellant in his condominium. That same day, Callaghan's sliding door was damaged and the screen to his bedroom window was slit. Unlike Leonard, Callaghan did not find appellant in his home; appellant's fingerprints, however, matched those recovered on his damaged bedroom window.

{¶ 28} Second, with respect to appellant's possession of the trash can, the state presented the following testimony from Sergeant Baker, which further supports this inference that appellant had the requisite intent for committing an offense:

> [COUNSEL]: And based on your experience and your training when somebody burglarizes a home with purpose to commit a theft, what do you expect them to do?
>
> [SERGEANT BAKER]: Well, there's been certain instances within the City of Hilliard on cases that I have investigated where the offender will carry something in to remove items. So in this case we had the defendant carried a trash can, which that would be common. Many times you see them remove a laundry basket or pillowcase, it's very common for them to carry items in that. They can use it to carry items out of the structure.

(Tr. 57-58.) Based on this testimony, a fact finder could reasonably conclude that appellant's explanation was implausible under the circumstances, and, instead, reasonably infer that he had the intention of committing an offense.

{¶ 29} In resolving the conflicting evidence in light of the credibility of the witnesses and the evidence presented at trial, nothing suggests that the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387.

{¶ 30} Accordingly, we overrule appellant's first assignment of error.

## III. Disposition

{¶ 31} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and BRUNNER, JJ., concur.

_____